OPINION
Defendant-appellant, Todd Elder, pled guilty to one count of rape in violation of R.C. 2907.02(A)(2), one count of felonious assault in violation of R.C. 2903.11(A)(2), and one count of gross sexual imposition (GSI) in violation of R.C.2907.05(A)(1) in June 1997. In July 1997, the Butler County Court of Common Pleas adjudicated appellant a sexual predator pursuant to R.C. 2950.09(B)(1), sentenced him to consecutive terms totaling nineteen and one-half years in prison, fined him $17,500 and ordered him to pay the costs of the prosecution as to the GSI offense. Appellant appeals, raising four assignments of error. Finding no merit to any assignment of error, we affirm the trial court.
Because appellant pled guilty to the aforementioned charges, there is no trial transcript before this court. However, the following facts may be gleaned from the grand jury indictment, appellant's statement to the police, and the transcript of appellant's sexual predator hearing and sentencing. On April 15, 1996, appellant was driving in Hamilton when he spotted his victim, a sixteen-year-old girl, walking home from school. In his statement to police, appellant admits he parked his truck and began to follow the victim on foot. Upon catching up with her, appellant states he "pushed her down" then "told her to pick up her books and follow me into the woods." The victim "asked me if I wanted her money. I told her no," and instead appellant forced the victim to fondle his penis. Specifically, appellant states "I told her to play with me. She didn't want to and I asked her again and she did." Appellant began to achieve an erection. Appellant states that while the victim "was playing with me. [sic] I pulled her pants down * * *." Appellant then kissed the victim, "laid on top of her," and licked her vaginal area. Following these acts, appellant admits he compelled the victim to perform fellatio on him. Both the prosecutor and victim allege that appellant vaginally raped his victim, however no such admission can be found in appellant's statement. After these events, appellant admits he "hit her in the head with a rock," and fled the scene.
On April 9, 1997, appellant was indicted on a total of six charges. Count one charged appellant with rape for the forced fellatio, count two charged appellant with rape for the vaginal penetration, count three charged appellant with felonious assault for striking the victim in the head with a rock, count four charged appellant with GSI for forcing the victim to fondle his penis, count five charged appellant with GSI for kissing and licking the victim's body, and count six charged appellant with kidnapping for physically compelling the victim to follow him into the woods by force or threat of force. On June 2, 1997, in exchange for appellant's guilty pleas, the prosecutor merged count two and six into count one (fellatio rape), and count five into count four (genital fondling).
At a sentencing hearing on July 9, 1997, the trial court conducted a separate hearing pursuant to R.C. 2950.09(B) to determine whether appellant was a sexual predator. Considering the arguments of counsel and the requirements of R.C. 2950.09(B), the court determined "by clear and convincing evidence that the defendant meets the definition of a sexual predator * * *." With respect to the count of fellatio rape, the court sentenced appellant to "an indefinite period of ten to twenty-five years" and a $10,000 fine. With respect to the felonious assault count, the court sentenced appellant to "an indefinite term of eight to fifteen years" and a $7,500 fine, and with respect to the count of GSI, the court ordered appellant to serve a "definite period of eighteen months" and pay the costs of prosecution. Thus, in total, appellant was sentenced to consecutive terms totaling a minimum of nineteen and one half years and fined over $17,500.
In his first assignment of error appellant contends:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY IMPOSING AN AGGREGATE MINIMUM TERM OF GREATER THAN FIFTEEN YEARS.
Pursuant to R.C. 2929.41:[1]
 (E) Consecutive terms of imprisonment imposed shall not exceed:
* * *
 (2) An aggregate minimum term of fifteen years * * * when the consecutive terms imposed are for felonies other than aggravated murder or murder.
Appellant contends, correctly in fact, that his sentence exceeds the aggregate limits imposed by statute, and urges this court to correct his sentence to avoid any future difficulties.
However, the Supreme Court of Ohio has held that this statute is "self-executing, automatically operating to limit the aggregate minimum sentencing term to fifteen years." State v. White (1985), 18 Ohio St.3d 340, 341. There is "no necessity for modification of the consecutive sentences imposed so as to limit the aggregate minimum term to fifteen years because the effects of the statutory scheme in question are self-executing." Id. at 342. Therefore, the trial court's sentence does not constitute error and appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY SENTENCING THE APPELLANT ON BOTH THE RAPE AND THE CHARGE OF GROSS SEXUAL IMPOSITION.
In this assignment of error, appellant argues that because rape and GSI are allied offenses pursuant to R.C. 2941.25(A), the trial court committed plain error in sentencing him on both charges and appellant urges this court to find his sentence is contrary to law.
Plain error only exists where substantial rights are so adversely affected as to undermine the fairness of the guilt determining process. State v. Swanson (1984), 16 Ohio App.3d 375,377. "Notice of plain error is * * * to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91,97.
Bearing this principle in mind, we turn our attention to the instant case. R.C. 2941.25, provides that:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictments or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of similar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In determining whether two offenses are allied under R.C.2941.25, the Ohio Supreme Court has developed a two-step analytical framework. Newark v. Vazirani (1990), 48 Ohio St.3d 81; State v. Blankenship (1988), 38 Ohio St.3d 116; State v. Mughni (1987), 33 Ohio St.3d 65. The first step requires this court to compare the elements of the offenses to determine whether the elements correspond so substantially that the commission of the one offense necessarily results in the commission of the other. Vazirani at 83. If the offenses so correspond, they are allied offenses of similar import, and this court must proceed to the second step of the analysis. Id. The second step requires this court to review appellant's conduct to determine whether the offenses were committed separately or with a separate animus as to each. Id. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, appellant may be convicted of both offenses. Id.; R.C. 2941.25(B).
Utilizing this paradigm, we shall compare the elements of rape and GSI to determine whether they are allied offenses of similar import. Ohio's rape statute, R.C. 2902.02(A)(2) provides, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." (Emphasis added.) Sexual conduct is defined in R.C. 2907.01(A) as "vaginal intercourse between a male and a female; anal intercourse, fellatio, * * * between persons regardless of sex; * * *." Ohio's GSI statute, R.C. 2097.05(A)(1) provides, "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; * * *." (Emphasis added.) Sexual contact is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, * * * for the purpose of sexually arousing or gratifying either person." Therefore, it is clear that the elements of rape and GSI correspond so substantially that appellant's commission of fellatio rape necessarily resulted in the commission of GSI. Put another way, the sexual conduct involved in the instant case necessarily involved sexual contact, therefore we find that rape and GSI are allied offenses of similar import. See State v. Stankorb (Dec. 17, 1990), Clermont App. No. CA90-03-027, unreported.[2]
Having completed the first step of the two-step analytical framework, we advance to the second step and examine appellant's conduct to determine whether these offenses were committed separately or with a separate animus as to each. If so, appellant may be convicted and sentenced for both offenses.
In support of his argument that the offenses were not committed separately or with a separate animus, appellant cites State v. Abi-Sarkis (1988), 41 Ohio App.3d 333. In Abi-Sarkis, appellant was convicted of fellatio rape and gross sexual imposition. The appellate court found that the trial court committed error by failing to merge the offenses. The sexual contact in Abi-Sarkis consisted of the male appellant fondling his alleged victim immediately prior to the act of fellatio. The court held that the fondling "was incidental to the act of fellatio * * * and that there were no separate animuses to said conduct." Id. at 336. However, we find Abi-Sarkis distinguishable from the facts and circumstances of the instant case.
Unlike Abi-Sarkis, where the appellant's acts constituted one uninterrupted assaultive episode without a separate animus as to each act, appellant's conduct in the instant case cannot be viewed as a single assaultive episode. Appellant began his assault of the victim by compelling her to follow him into the woods and fondle his penis, thus committing the GSI offense. Then, according to appellant's own statement, that act was followed by (1) appellant beginning to achieve an erection, (2) appellant removing the victim's clothing, (3) appellant kissing the victim, (4) appellant lying on top of the victim, and (5) appellant licking the victim's vaginal area. Therefore, while the genital fondling (GSI) and the act of fellatio (rape) were committed within a short period of time, appellant committed five distinct, significant, and intervening acts, before compelling the victim to perform the act of fellatio. See State v. Jones (1997), 78 Ohio St.3d 12, 14.[3] Because we find these five intervening acts or events sufficient to justify separate sentences, the trial court did not commit plain error when it sentenced appellant for both offenses. Accordingly, appellant's second assignment of error is overruled.
In his third assignment of error, appellant contends:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN IMPOSING THE MAXIMUM FINES ON THE FIRST DEGREE FELONY AND THE SECOND DEGREE FELONY.
Appellant asserts that the trial court abused its discretion by imposing fines totaling $17,500 when nothing in the record supports a finding that appellant had the ability to pay such fines.
A trial court has broad discretion in sentencing and a reviewing court will not interfere with the sentence unless the trial court abused its discretion or erred as a matter of law. State v. Yontz (1986), 33 Ohio App.3d 342, 343. The term "abuse of discretion" implies that the trial court's ruling was "unreasonable, arbitrary, or unconscionable," State v. Adams (1980), 62 Ohio St.2d 151, 157, and because trial courts have broad discretion in sentencing, a sentence will not be disturbed upon review so long as it falls within the confines of a valid statute. City of Columbus v. Jones (1987), 39 Ohio App.3d 87,88.
R.C. 2929.14(C) provides that a court "shall not impose a fine or fines for felony that, * * * exceed the amount that the offender is or will be able to pay * * * without any undue hardship * * *." However, the record before this court does not indicate that at sentencing, or at any time prior to sentencing, appellant informed the trial court of his indigent status. Nor does the record reveal that after the fines were imposed, appellant or his counsel objected or asserted that appellant was or would be unable to pay such fines without undue hardship.
While it is mandatory that a trial court consider the impact a fine has on an offender, State v. Stevens (Nov. 19, 1986), Hamilton App. No. C-860101 C-860107, unreported at 4, we note that a trial court "is required to consider such things only if evidence of them is offered at the sentencing hearing." State v. Armstrong (Apr. 22, 1996), Scioto App. No. 95CA2346, unreported at 22, quoting State v. Burkitt (1993), 89 Ohio App.3d 214, 229. "Where the offender does not object at the sentencing hearing to the amount of the fine and does not request an opportunity to demonstrate to the court that he does not have the resources to pay the fine, he waives any objection to the fine on appeal." Armstrong at 22.
As a result of appellant's failure to produce evidence indicating indigency prior to sentencing, and his failure to object to the fines imposed, we find that the trial court did not abuse its discretion by imposing fines upon appellant. Accordingly, appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant contends:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN FINDING THAT HE IS A SEXUAL PREDATOR AND IS REQUIRED TO REGISTER AS SUCH PURSUANT TO O.R.C. [sic] 2950.09(C), AS THE STATUTE AS APPLIED IS IN VIOLATION OF THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION AND THE RETROACTIVE CLAUSE OF THE OHIO CONSTITUTION.
R.C. 2950.01 et seq. establishes a procedure for classifying criminal offenders convicted and sentenced for various sexually oriented offenses as sexual predators. R.C. 2950.01 et seq. also creates a comprehensive registration and community notification scheme which must be complied with upon an offender's release from imprisonment.[4] The classification procedure which is applicable to appellant may be found in R.C. 2950.09(B)(1) which provides:
 Regardless of when the sexually oriented offense is committed, if a person is to be sentenced on or after the effective date of this section for a sexually oriented offense * * * the judge who is to impose sentence upon the offender shall conduct a hearing to determine whether the offender is a sexual predator.
A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). On July 9, 1997, the trial court held the requisite hearing and upon considering the factors listed in R.C. 2950.09(B)(2), determined that appellant was a sexual predator.
In this assignment of error, appellant's attack is twopronged. First, he contends that because he committed the offenses prior to the effective date of R.C. 2950.01 et seq., the trial court erred as a matter of law in applying the applicable provisions in violation of the Ex Post Facto Clause of the United States Constitution. Such argument was considered and rejected by this court in State v. Lyttle (Dec. 22, 1997), Butler App. No. CA97-03-060, unreported, and State v. Nicholas (Apr. 6, 1998), Warren App. Nos. CA97-05-045, CA97-04-035, CA97-04-036, CA97-05-040, CA97-05-044, CA97-05-046, CA97-05-047, CA97-05-052, CA97-06-63 unreported. In Lyttle, we held that classifying a person as a sexual predator pursuant to R.C. 2950.01 et seq. did not violate the Ex Post Facto Clause of the United States Constitution because the "classification scheme and attendant registration, verification, and notification provisions set forth in R.C. Chapter 2950 are not punitive." Lyttle at 22. On this authority, we find appellant's first attack on R.C. Chapter 2950 unpersuasive.
In the second prong of his attack, appellant contends that because he committed these offenses prior to the effective date of R.C. 2950.01 et seq. the trial court erred as a matter of law by applying the applicable provisions in violation of the retroactive clause of the Ohio constitution. Again, such argument was considered and rejected by this court in Lyttle when we determined that R.C. Chapter 2950 does not violate Ohio's constitutional provision against retroactive legislation. Specifically, we held that "application of R.C. Chapter 2950 does not impair or take away any vested right, affect an accrued substantive right, or impose new or additional burdens, duties, obligations or liabilities based upon past conduct." Lyttle at 28. Having considered the foregoing arguments, we conclude that appellant's fourth assignment of error is without merit.
Judgment affirmed.
WALSH, J., concurs.
KOEHLER, J., dissents.
[1] We note that R.C. 2929.41 has been significantly modified by Senate Bill 2. However, the provisions of Senate Bill 2 are prospective in nature and only apply to offenses committed on or after July 1, 1996, the effective date of the statute. See State v. Cox (Apr. 28, 1997), Warren App. No. CA96-07-069, unreported. Therefore, because appellant committed the offenses prior to the effective date of Senate Bill 2, we shall apply the former version of R.C. 2929.41 to the instant case.
[2] In Stankorb, this court found on the facts that rape and GSI were allied offenses of similar import.
[3] The Ohio Supreme Court in Jones held that act of vaginal penetration, loss of an erection, withdrawal from the vagina, and removal of a tampon were sufficient intervening acts to justify a jury verdict that the first act of oral rape was separate from the second act of oral rape.
[4] The classification provisions of R.C. 2950.01 et seq. went into effect on January 1, 1997, while the registration and community notification provisions went into effect of July 1, 1997.